UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER J. DIRIG,

    Plaintiff,

    v.                                        CAUSE NO.: 3:18-CV-356-PPS-MGG

RONNIE NEAL,

    Defendant.

OPINION AND ORDER

       Christopher J. Dirig, a prisoner without a lawyer, filed an amended complaint. The Prisoner Litigation Reform Act gives authority to federal courts to allow plaintiffs to initiate actions without the prepayment of filing fees. 28 U.S.C. § 1915. That authority is constrained by Section 1915(g), commonly referred to as the "three strikes rule." *See e.g., Coleman v. Tollefson*, 135 S. Ct. 1759, 1761 (2015). A dismissal on grounds that an action is frivolous, malicious, or fails to state a claim is a strike for purposes of § 1915(g). *Id.* A prisoner who has accumulated three strikes cannot proceed without a full prepayment of the filing fee unless he can establish that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

       Dirig has accrued three strikes under the Prison Litigation Reform Act and cannot proceed in this case without full payment of the filing fee, absent an allegation of imminent danger of serious physical injury. Nevertheless, I granted him leave to proceed in forma pauperis based on his allegations that he cannot walk and as a result he cannot safely navigate his cell to access his toilet and cannot safely navigate outside

of his cell to access the showers. Additionally, I ordered Warden Ron Neal to respond to the allegation of imminent danger by explaining Dirig's medical condition, his housing condition, his ability to use the toilet and shower, and other relevant information. The Warden filed a response, contesting the allegation of imminent harm with his sworn declaration. Dirig replies by filing various motions, including objections to the Warden's exhibits.

FACTUAL BACKGROUND

According to the amended complaint, on May 2, 2018, Dirig transferred to the Indiana State Prison. ECF 22. He had suffered a weightlifting injury about one year earlier. Dirig was placed in the segregation unit and became concerned that the cell did not accommodate his injuries with respect to access to the toilet and shower. Though Dirig had a wheelchair when he first arrived, medical staff determined that it was unnecessary on May 17, 2018. He described his injuries during that medical encounter as follows:

> **Nurse Stewart:** How do you use the toilet?
>
> **Dirig:** I use my hands to lift my body weight and kind of use my right leg to slide myself to the end of the bunk. When I get to the toilet, I grab the sink, kind of fall forward to lean again the wall, and hope I don't fall in or break my neck.
>
> **Nurse Stewart:** [How do you move around your cell?]
>
> **Dirig:** I don't because the wheelchair doesn't fit, and I can't stand or walk on my own, so I just sit or lay around all day.
>
> **Nurse Stewart:** How do you shower?
>
> **Dirig:** I haven't had a shower since I arrived on May 2, 2018.

2

Dirig then met with Dr. Marthakis and demonstrated that he could not walk even a few steps due to the weakness and numbness in his left leg. Nevertheless, Dr. Marthakis determined that Dirig did not need a wheelchair.

The Warden supports his declaration with several exhibits, which include the opinions of medical staff, the observations of correctional staff, a layout of the segregation unit, and video recordings of Dirig. ECF 27. Dr. Liaw, who treated Dirig at the Westville Correctional Center, submitted an affidavit. ECF 27-8. He attests that, on October 4, 2017, he noted that Dirig had progressed from a wheelchair to a walker following the weightlifting injury. Dirig told him that he was able to walk and merely used the walker for balance. Dr. Liaw noted that other staff observed Dirig carrying his walker for short distances. He observed no objective signs of muscular skeletal deficits, except for the use of a walker. Though Dirig reported up to five instances of bladder incontinence per day, Dr. Liaw could not confirm these findings after consulting with security staff. Dirig also refused additional physical therapy sessions. On this basis, Dr. Liaw suspected that Dirig had a higher level of functioning than he admitted.

On November 17, 2017, Dr. Jackson concluded that Dirig no longer needed a walker for ambulation and that Dirig was malingering. He based this conclusion on Dirig's medical records and his own observation of Dirig. He noted the absence of evidence for the reported bladder incontinence and also discontinued the order for adult diapers.

On January 29, 2018, Dr. Liaw sat in an encounter with Dirig and Dr. Jackson. This was because Dirig had complained that, on January 19, 2018, Dr. Jackson and a nurse practitioner used a choke hold to remove him from a wheelchair. Dr. Liaw had observed this interaction from about ten feet away and knew that the complaint was not true. Dr. Liaw observed Dr. Jackson's evaluation of Dirig. Based on this evaluation, Dirig's previous medical encounters, and reviews of X-rays and MRI scans, Dr. Liaw concluded that Dirig's subjective complaints did not match the objective symptoms and agreed that he did not need a walker.

On April 30, 2018, at the Miami Correctional Facility, Dirig was seen by an outside provider by videoconference. He complained of muscular skeletal complaints. The provider was unable to assess neurological health by videoconference, but issued a permit for a wheelchair as a precaution.

Dr. Marthakis, who treated Dirig at the Indiana State Prison, submitted a signed statement. ECF 27-10. She states that, on May 17, 2018, she observed Dirig move from his wheelchair to a step-up scale to be weighed without difficulty or assistance. She also observed him with a stooped gait and leaning on objects as they were available, though she did not observe him fall or buckle. Considering her observations and review of the medical records, she concluded that Dirig has the ability to walk unassisted. She noted that his spontaneous improvements were not consistent with serious untreated neurological conditions and further opined that Dirig had intentionally presented himself with intermittent regressions that did not represent his true functional ability.

Though Dr. Liaw did not treat Dirig after his transfer from the Westville Correctional Facility, he has reviewed the medical records documenting Dirig's subsequent treatment. Based on his personal observations and review of the relevant medical records, Dr. Liaw's ultimate opinion is that Dirig does not need assistive devices to walk. He also concludes that Dirig is likely malingering.

According to the layout of the segregation unit (ECF 27-12) and the video recordings, Dirig resides alone in Cell 106 of the first floor of the east wing of D Cell House in a six-foot by nine-foot cell with a toilet and sink. The shower unit is a similarly sized room and is located six doors down. The cell and shower unit are connected by a narrow corridor with a chain link fence on one side and a wall lined with cell doors with metal bars on the other side.

The video recordings include: two recordings showing the occupant of Cell 106 walking from the back of the cell to the front of the cell on June 3, 2018, and June 15, 2018; and two recordings that show Dirig walking outside of his cell on June 26, 2018. The video recording show that Dirig walks with a deliberate gait and appears to favor his right leg, but he is able to walk from his cell to the end of the hallway without assistance.

According to a signed memorandum from Correctional Officer Thomas, Dirig is regularly offered a shower along with the other residents of the segregation unit, but he refuses because he has not been provided a shower chair or a wheelchair. ECF 27-14. Dirig also refused a shower even when he was offered a chair. According to a signed

memorandum from Sergeant Statham, Dirig has occasionally walked to outdoor recreation. ECF 27-15.

DISCUSSION

The Warden challenges Dirig's allegation of imminent danger of physical harm. The Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). "If a defendant contests a plaintiff's imminent-danger allegations . . . the court must determine the allegations' credibility, either by relying on affidavits or depositions or by holding a hearing." *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) (citing *Gibbs v. Roman*, 116 F.3d 83 (3rd Cir. 1997)).

The Warden has submitted substantial evidence to show that Dirig's allegation of imminent danger is not credible. Specifically, the Warden has submitted documents indicating that medical staff and correctional staff have observed Dirig walking on numerous occasions and that three separate physicians have concluded that Dirig does not require assistive devices to walk. The Warden has also submitted video recordings that show Dirig walking. Despite Dirig's objections to these video recordings, he concedes that he is shown in the video of him walking outside his cell. ECF 43. This evidence, particularly with respect to the video recordings, significantly undermines Dirig's assertion that he is physically unable to walk.

Dirig's lack of consistency in describing his physical abilities is also a detriment to his credibility. For instance, after the Warden submitted the video recording of Dirig

walking outside of his cell, Dirig responded that he "never said he couldn't walk, he just can't do so on his own," noting that he needed assistance with standing. ECF 41. However, he alleged in the amended complaint that he could not take even a few steps when asked by Dr. Marthakis. ECF 22 at 8-10. He stated that "staff placing a chair in the shower does not assist [him] because he cannot physical[ly] walk and sit down" and that he could not use the shower even if staff helped him walk there. ECF 30 at 1-2; ECF 37 at 2. He stated that, on May 22, 2018, he required the assistance of two correctional officers to stand him up and walk him sideways down the hall to get his mail. *Id.* at 4-5. He has stated that he can pull himself to the standing position if necessary. ECF 36 at 1. He has stated that three or four officers were required to place him in a wheelchair. ECF 19 at 4-5. He has indicated that a cane would enable him to safely take a shower. ECF 44 at 1. In sum, Dirig's descriptions of his physical ability are wildly inconsistent.

Moreover, Dirig's conduct demonstrates a lack of sincerity regarding his allegation of imminent danger. For example, despite the court granting him leave to proceed only on a claim for injunctive relief related to access to the toilet and shower, he repeatedly emphasizes his entitlement to damages, complains about telephone use and recreational time, and asks for employment termination and criminal prosecution. *See e.g.,* ECF 9 at 1-2; ECF 13 at 4; ECF 19 at 7; ECF 22 at 14; ECF 30 at 5, 9; ECF 36 at 2; ECF 45 at 2; ECF 47 at 2, 4, 5. In one filing, Dirig suggested that the recording was fake even though he had not seen it. ECF 41-1. Dirig later advised that he attempted to refuse to view this recording. ECF 43. Further, it was only after the Warden submitted this recording (ECF 34) that Dirig notified the court for the first time that he had suffered an

injury -- a twisted left leg -- at Indiana State Prison as a result of his alleged inability to walk. ECF 42. And even if I overlooked its opportunistic timing, Dirig also indicated that he refused to accept medical treatment for this alleged injury. ECF 45. At bottom, Dirig's behavior is not consistent with an individual facing imminent danger of physical harm.

After reviewing the record, I conclude that Dirig's allegation that he is in imminent danger of physical harm is not credible. The Warden has provided substantial evidence that Dirig can walk without assistance. Though Dirig may have some physical limitations, the Warden has provided evidence from multiple sources that strongly indicates that Dirig is able to safely use the toilet in his cell and the shower down the hall. By contrast, Dirig primarily relies on his own statements to establish imminent danger. However, his inconsistent statements, his disingenuous conduct, and his denials regarding his ability to walk in the face of incontrovertible evidence to the contrary are fatal to his credibility. Additionally, Dirig has repeatedly indicated that correctional staff is willing to assist him with his disability. *See e.g.*, ECF 22 at 10 (walking); ECF 41 (standing); ECF 43 (standing); ECF 30 (attempt to shower and mail). Because Dirig's allegation of imminent danger is not credible, he can no longer proceed in forma pauperis; instead, he must pay the filing fee in full to proceed in this case.

As a final matter, this case has several pending motions filed by Dirig. He has filed several motions objecting to the Warden's exhibits. ECF 36, 38, 40, 41, 46. Though I have considered these objections in assessing the credibility of the Warden's exhibits, the motions are denied to the extent that they suggest that the Warden's exhibits should

not be considered. He has also filed several motions seeking injunctive relief and a motion to amend his complaint. ECF 30, 44, 45, 47. I have also considered these motions to the extent they were relevant to the credibility determination, but these motions are denied with leave to refile after Dirig resolves his filing fee status.

For these reasons, the court:

(1) VACATES the Order Granting Leave to Proceed In Forma Pauperis (ECF 3);

(2) ORDERS Christopher J. Dirig to pay the $400.00 filing fee by August 15, 2018;

(3) CAUTIONS Christopher J. Dirig, that if he does not respond by that deadline, his case will be dismissed without further notice;

(4) DENIES the motions related to the Warden's exhibits (ECF 36, 38, 40, 41, 46); and

(5) DENIES the motions for injunctive relief and to amend the complaint (ECF 30, 44, 45, 47) with leave to refile after payment of the filing fee.

SO ORDERED on July 12, 2018

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT